AARON MICHAEL MORRISON (CA Bar # 228291)
LAW OFFICE OF AARON M. MORRISON
2000 Riverside Drive Los Angeles CA 90039
Tel. (213) 640-9129
Fax. (323) 662-2266
Email: aaronmorrisonlaw@gmail.com
*Attorney for the Petitioner*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JESUS HERRERA CORDOVA.

Petitioner,

v.

TODD BLANCHE, in his official capacity as United States Attorney General;

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security (DHS);

DAVID J. VENTURELLA, in his official capacity as Acting Director of Immigration & Customs Enforcement (ICE);

ERNESTO SANTACRUZ, JR., in his official capacity as Los Angeles Field Office Director of Immigration & Customs Enforcement; and

FERETI SEMAIA, in his official capacity as Facility Administrator, Adelanto ICE Processing Center,

Respondents.

Case No: 5:26-cv-05266

Agency Case No.: A 078-020-062

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

IMMIGRATION HABEAS CASE

Petitioner, Mr. Jesus Herrera Cordova ("Mr. Herrera") petitions this Court for a writ of habeas corpus to remedy his unlawful detention by Respondents, as follows:

INTRODUCTION

1. Mr. Herrera is a forty-three-year-old native and citizen of Mexico, who first entered the United States without authorization at about three years of age in 1986. On or about August 20, 2021, Immigration and Customs Enforcement ("ICE") arrested Mr. Herrera and sought to reinstate a prior removal order. While detained, an asylum officer conducted a reasonable fear interview of Mr. Herrera before issuing a decision determining that he did not establish a reasonable fear of persecution or torture if removed. On September 15, 2021, an Immigration Judge ("IJ") reversed this decision and placed Mr. Herrera in "withholding only proceedings." *See* Exhibits A and B.

2. On February 17, 2022, the IJ conducted a bond hearing in Mr. Herrera's case and ordered him released from detention subject to the posting of a monetary bond in the amount of $30,000. *See* Exhibit C. However, ICE released Mr. Herrera on his own recognizance on February 18, 2022. *See* Exhibit D.

3. Mr. Herrera continued to pursue his applications for protection from removal on the non-detained docket at the Santa Ana Immigration Court, attending all of his court hearings from the time he was released until the conclusion of his proceedings in Santa Ana in October 2025. During this nearly four and half year period, he also appeared for all of his check-in appointments with ICE. Moreover, Mr. Herrera had no negative contact with law enforcement. *See* Exhibit A.

4. On July 28, 2026, ICE, with no advance notice, arrested Mr. Herrera while he was in route to his place of employment, taking him into custody and ultimately re-detaining him at the Adelanto ICE Processing Facility in Adelanto, California. *Id.*

5. Because ICE's re-detention of Mr. Herrera constitutes a violation of due process, he is now submitting the instant petition for habeas corpus.

JURISDICTION

6. Petitioner, Mr. Herrera is in the physical custody of Respondents and Immigration and Customs Enforcement, an agency within the Department of Homeland Security. Mr. Herrera is currently detained at the Adelanto ICE Processing facility in Adelanto, California and is under the direct control of the Respondents and their agents.

7. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*

8. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, Section 9, clause two of the United States Constitution (the Suspension Clause).

9. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

10. Nothing in the INA deprives this Court of jurisdiction, including 8 U.S.C. §§ 1252(b)(9), 1252(f)(1), or 1226(e). Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v. Rodriguez,* 138 S. Ct. 830, 839-41 (2018) (holding that 8 U.S.C. §§ 1226(e) and 1252(b)(9) do not bar review of judicial challenges to prolonged detention).

VENUE

11. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Mr. Herrera is currently in custody.

12. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

PARTIES

**Petitioner**

13. JESUS HERRERA CORDOVA, Petitioner, is a citizen of Mexico who was re-detained by Respondents on July 28, 2026. He has been in the custody of the Department of Homeland Security since that time.

**Respondents (in their official capacities)**

14. TODD BLANCHE is the Attorney General of the United States and the head of the Department of Justice, which encompasses the Board of Immigration Appeals and immigration judges as a subunit under the heading the Executive Office of Immigration Review ("EOIR"). By virtue of his supervisory responsibility over EOIR, he is responsible for Petitioner's continued detention and place of detention.

15. MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security ("DHS"), and is responsible for overseeing the Department, its sub-unit ICE, and has ultimate responsibility for the detention of non-citizen detainees in civil immigration custody. Secretary MULLIN is a legal custodian of Petitioner.

16. ERNESTO SANTACRUZ JR. is the Acting Field Office Director for the Los Angeles Field Office of ICE. Mr. Santacruz Jr. oversees ICE's custody determinations under that Field Office and is a legal custodian of Petitioner.

17. DAVID J. VENTURELLA, is the Acting Director of ICE and is named in his official capacity. As the head of ICE, an agency within the U.S. Department of Homeland

Security that detains and removes certain noncitizens, Acting Director Venturella is a legal custodian of Petitioner.

18. FERETI SEMAIA, is on information and belief employed by the private corporation Geo Group Inc., as facility administrator of the ICE Adelanto Processing Center, where Petitioner is detained. He is the immediate physical custodian of Petitioner.

FACTUAL ALLEGATIONS

19. Petitioner, Mr. Herrera is currently detained by Immigration and Customs Enforcement at the Adelanto ICE Processing Facility in Adelanto, California, where he has been incarcerated since July 28, 2026. *See* Exhibit A.

20. Mr. Herrera was born in Mexico on March 1, 1983. He entered the United States for the first time when he was approximately three years old in 1986. He does not recall where or how he entered. In July of 2003, Mr. Herrera was removed from the United States but returned unlawfully a few weeks later. He was removed from the United States in August of 2013 and returned to the U.S. without inspection in September of 2013. Mr. Herrera subsequently reentered the United States without inspection in September of 2015 and was apprehended near the border. He was then convicted for illegal reentry and removed in January of 2016. He returned to the United States in April of 2016 without inspection and has not departed the United States since that time. *See id.*

21. Mr. Herrera is legally married to a United States Citizen, with whom he has three minor U.S. citizen children. Additionally, he has two other U.S. born children from a previous relationship. *See* Exhibits A and E.

22. On August 20, 2021, Mr. Herrera was arrested by ICE while in route to his place of employment, based on his prior removal order, which ICE sought to reinstate. He was then

transferred to the Desert View Annex Detention Facility in Adelanto, California. Because he expressed a fear of future persecution and torture if removed to Mexico, Mr. Herrera was given a reasonable fear interview with an asylum officer. On or about September 14, 2021, the asylum officer issued a decision finding that Mr. Herrera failed to establish a reasonable fear of persecution or torture if removed to Mexico. On or about September 15, 2021, the Immigration Judge reversed the asylum officer's decision and placed Mr. Herrera in "withholding only proceedings." *See* Exhibits A and B.

23. On February 17, 2022, the Immigration Judge conducted a bond hearing in Mr. Herrera's case and ordered his release from detention subject to a bond in the amount of $30,000. *See* Exhibit C. However, before Mr. Herrera could post the bond, the government released him on my own recognizance on February 18, 2022. *See* Exhibit D.

24. After being released from custody, Mr. Herrera's immigration case was transferred to the Santa Ana Immigration Court, where he continued to pursue his applications for withholding of removal and protection under the convention against torture. Mr. Herrera attended hearings at the Santa Ana Immigration Court on June 17, 2022, January 9, 2023, February 6, 2024, November 22, 2024, and October 17, 2024. He asserts: "I never failed to appear for any of my hearing dates in immigration court. I was also required to report in person to ICE on a regular basis. I never failed to comply with any ICE reporting requirements. Nor since my release from detention, have I had any arrests, convictions or negative contact with law enforcement." *See* Exhibit A. During this time period, Mr. Herrera was repeatedly granted work authorization. *See* Exhibit H.

25. On October 17, 2025, the Immigration Judge denied Mr. Herrera's applications for protection from removal. *See* Exhibit I. He then filed a timely appeal of this decision with the Board of Immigration Appeals, which remains pending. *See* Exhibit J.

26. On July 28, 2026, while in route to work, Mr. Herrera was again stopped and detained by ICE officers. He contends: "I explained to them that my case was on appeal and still pending, but they insisted on arresting and detaining me. I was then transferred to the Adelanto ICE Processing Facility in Adelanto, California, where I currently remain." Exhibit A.

27. Mr. Herrera further asserts: "ICE has re-detained me despite the fact that I complied with their reporting requirements for 4 years straight. During that time period, I also appeared for all of my immigration court hearings. And I was not given any advance notice that ICE would seek to re-detain me or an opportunity to challenge the legality of my current detention." *Id.*

**LEGAL FRAMEWORK**

28. Pursuant to 28 U.S.C. § 2243, the Court either must grant the instant petition for writ of habeas corpus or issue an order to show cause to Respondents, unless Petitioner is not entitled to relief. If the Court issues an order to show cause, Respondents must file a response "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." 28 U.S.C. § 2243 (emphasis added).

29. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

30. This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or

capricious."). It also protects noncitizens who have been ordered removed from the United States and who face continuing detention. *Id.* at 690.

31. Individuals conditionally released from custody, such as noncitizens during immigration proceedings, have a liberty interest in their continued conditional release, which must be protected by adequate procedural safeguards. *See Yixi Sun v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-03595-MBK,2026 U.S. Dist. LEXIS 156111, 2026 WL 2058437, at *10 (C.D. July 14, 2026); *Sheng Kun v. Janecka et al.*, No. ED CV 26-1280-DMG (AYP), 2026 U.S. Dist. LEXIS 78241, 2026 WL 931541, at *4 (C.D. Cal. Apr. 3, 2026).

32. Thus, "[w]hile the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## <u>CLAIM FOR RELIEF</u>

## COUNT ONE

## VIOLATION OF FIFTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS

***Mr. Herrera Had A Liberty Interest In His Conditional Release***

33. Mr. Herrera re-alleges and incorporates by reference the paragraphs above.

34. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

35. In analyzing a procedural due process claim, the Court must conduct a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).

Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Id.*

36. Here, Respondents initially detained Mr. Herrera in August of 2021. On February 17, 2022, an Immigration Judge conducted a bond hearing and ordered his release subject to a monetary bond in the amount of $30,000. *See* Exhibit C. However, on February 18, 2022, Respondents elected to release Mr. Herrera on his own recognizance pursuant to an order of supervision, thus negating the need for Mr. Herrera to post the bond. *See* Exhibit D. For the next four and half years, Mr. Herrera remained out of custody until his re-detention on July 28, 2026. While on conditional release, Mr. Herrera had no negative contact with law enforcement, was repeatedly granted work authorization (Exhibit H), attended all his immigration court hearings, and complied with the terms of his order of supervision. Therefore, Mr. Herrera had a liberty interest in his conditional release.

***An Analysis Of The Mathews Factors Weighs In Favor Of Mr. Herrera***

37. Because Respondents deprived Mr. Herrera of a protected liberty interest, the Court must consider "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

38. With respect to the first *Mathews* factor, Mr. Herrera has a substantial liberty interest in maintaining his life out of custody. Indeed, he has resided in the United States for over 40 years. He is married to a U.S. Citizen and has five citizen children. *See* Exhibits A and E. Moreover, as noted previously, Respondents released Mr. Herrera from detention on his own recognizance in

February of 2022, thus reflecting their determination that he posed no flight risk or a danger to the community. Mr. Herrera subsequently remained free from confinement for the next four and half years until Respondent ICE re-detained him in July of 2026. During the preceding four and half year period, Mr. Herrera maintained valid work authorization. *See* Exhibits A and H. Based on this record, Mr. Herrera had a substantial liberty interest in maintaining freedom from confinement conferred by his conditional release. *See Yixi Sun v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-03595-MBK,2026 U.S. Dist. LEXIS 156111, 2026 WL 2058437, at *11-12 (C.D. July 14, 2026) (conditional release for two years); *Lugos v. Mullin*, No. 5:26-cv-01880-KES, 2026 U.S. Dist. LEXIS 102011, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026); *Medrano-Rocha v. Santacruz*, No. 2:26-cv-00404-KK-SSC, 817 F. Supp. 3d 871, 2026 WL 411355, at *3 (C.D. Cal. 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 U.S. Dist. LEXIS 272792, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), adopted, 2026 U.S. Dist. LEXIS 9472, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). This factor then, weighs in Mr. Herrera's favor.

39. With respect to the second *Mathews* factor, "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived — [Mr. Herrera] of [his] liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 U.S. Dist. LEXIS 271568, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. Respondents released Mr. Herrera on his own recognizance from detention over four years ago. This was tantamount to a determination that he was not a danger to the community or a flight risk. And this determination appears to be accurate, as he complied with his order of supervision, appeared for all of his court hearings and had no problems with the law

during the period of his conditional release. Based on all of the above, there is a significant risk that the lack of a pre-deprivation process in the form of a hearing to determine whether Mr. Herrera in fact presents a danger or flight risk has resulted in his unlawful detention.

40. With respect to the third *Mathews* factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Further, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 U.S. Dist. LEXIS 165913, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 2025 WL 691664, at *6 (E.D. Cal. 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

41. In conclusion, Mr. Herrera has a strong interest in remaining free from detention and there is a significant risk that the Government's failure to provide notice and pre-deprivation hearing has resulted in his unnecessary detention. The Government's interest in refusing to provide such process is minimal.

42. For these reasons, Mr. Herrera's ongoing detention violates the Due Process Clause of the Fifth Amendment.

**COUNT TWO**

**VIOLATION OF 8 C. F. R. § 241.4(l)(1)**

43. Mr. Herrera re-alleges and incorporates by reference the paragraphs above.

44. Federal regulations governing ICE detention and revocation of release specifically

provide that: "Upon revocation [of release], the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *See* 8 C. F. R. § 241.4(l)(1). Here, Respondents violated their own regulations. Mr. Herrera simply was not provided any process at all. He has not received a custody redetermination or an informal interview. Nor has been informed of the reason for the revocation. Accordingly, his ongoing detention violates the Respondents' own regulations and is unlawful for that reason as well.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's ongoing detention violates the Due Process Clause of the Fifth Amendment;

(3) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;

(4) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(5) Grant any further relief this Court deems just and proper.

Dated: September 10, 2026

Los Angeles, California

Respectfully submitted,

/s/ Aaron M. Morrison

Aaron M. Morrison
Law Office of Aaron M. Morrison
2000 Riverside Drive
Los Angeles, CA 90039
213 640-9129
aaronmorrisonlaw@gmail.com
*Counsel for Petitioner*

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have discussed with the Petitioner the events described in this Petition. On the basis of those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Signature: /s/ Aaron Morrison

List of Exhibits

| | |
|---|---|
| Petitioner's Sworn Declaration | A |
| Decision of the Immigration Judge Reversing Asylum Officer | B |
| Decision of the Immigration Judge Ordering Petitioner's Release On Bond | C |
| ICE's Order Releasing Petitioner on His Own Recognizance/OSUP | D |
| Petitioner's Bond Filing (1) | E |
| Petitioner's Bond Filing (2) | F |
| DHS Bond Filing | G |
| Copies of Petitioner's Work Permits | H |
| Decision of the Immigration Judge Denying Relief | I |
| Appeal Receipt from the Board of Immigration Appeals | J |