UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS HERRERA CORDOVA,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 5:26-cv-05266-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Jesus Herrera Cordova ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 8), and Petitioner replied ("Reply" at Dkt. 9). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 7.)

The Petition is granted. Respondents shall immediately release Petitioner from custody, and they are enjoined from re-detaining him without complying with the procedures described below.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entries into the U.S., Prior Removals, and Criminal Convictions (1986-2021).

Petitioner is a 43-year-old native and citizen of Mexico, who first entered the U.S. in 1986, when he was 3 years old. (Pet. at 5, ¶ 20; Pet'r Decl. ¶ 3 / Dkt. 1-2 at 1.)

In July 2003, Petitioner was removed from the U.S. (Pet. at 5, ¶ 20; see also Answer Ex. A / Dkt. 8-1 at 6 (removal order).) He re-entered the U.S. unlawfully a few weeks later. (Pet. at 5, ¶ 20.) In August 2013, he was removed from the U.S. for a second time. (Pet. at 5, ¶ 20.) In September 2015, he was apprehended near the border while reentering the U.S. (Pet. at 5, ¶ 20.) He was convicted of illegal reentry and removed for a third time in January 2016. (Pet. at 5, ¶ 20.)

In addition to his 2015 federal criminal conviction for illegal reentry, Petitioner was convicted of multiple misdemeanor offenses in state court between 2001 and 2013: hit and run, driving without a license, firearms possession, public intoxication, and domestic battery. (Reply at 3.)

He returned to the U.S. in April 2016, entering without inspection, and he has not departed the U.S. since that time. (Pet. at 5, ¶ 20.)

### B. ICE Detention and Release (August 2021-February 2022).

On or about August 20, 2021, ICE arrested Petitioner and reinstated his prior removal order. (Pet. at 2, ¶ 1; id. at 5-6, ¶ 22.) On or around that date, DHS issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. (Answer Ex. A / Dkt. 8-1 at 3.) DHS also issued a Form I-205, Warrant of Removal/Deportation. (Answer Ex. A / Dkt. 8-1 at 4-5.)

While Petitioner was in immigration custody, he expressed a fear of persecution and torture if removed to Mexico. (Pet. at 6, ¶ 22.) An asylum officer conducted a reasonable fear interview and found that he had not established a reasonable fear of persecution or torture if removed. (Pet. at 2, ¶ 1; Pet'r Decl. ¶ 5

/ Dkt. 1-2 at 2.) However, on September 22, 2021, an Immigration Judge ("IJ") reversed this decision and placed Petitioner in withholding-only proceedings. (Pet. at 6, ¶ 22; Pet. Ex. B / Dkt. 1-3 at 1-2 (IJ's order).)

On February 17, 2022, an IJ conducted a bond hearing in Petitioner's case and ordered him released from detention subject to the posting of a monetary bond in the amount of $30,000. (Pet. at 6 ¶ 23; Pet. Ex. C / Dkt. 1-4 (IJ's order); Pet. Ex. E, F / Dkt. 1-6, 1-7 (evidence Petitioner submitted to the IJ for the bond hearing); Pet. Ex. G / Dkt. 1-8 (evidence DHS submitted to the IJ).)

Before Petitioner could post bond, however, ICE released him on an order of supervision ("OSUP"), without posting bond, on February 18, 2022. (Pet. at 6, ¶ 23; Pet'r Decl. ¶ 6 / Dkt. 1-2 at 2; Pet. Ex. D / Dkt. 1-5 (the OSUP).) Petitioner was enrolled in ICE's Alternatives to Detention ("ATD") program. (Id. ("Your release is contingent upon your enrollment and successful participation in an [ATD] program as designated by [DHS]. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew.").)

Petitioner remained at liberty for the next 4 and a half years. (Pet. at 2, ¶ 3.) He continued to pursue his application for protection from removal, attending multiple his court hearings. (Pet. at 6, ¶ 24; Pet'r Decl. ¶ 7 / Dkt. 1-2 at 2.) He appeared for all of his check-in appointments with ICE. (Pet. at 6 ¶ 24; Pet'r Decl. ¶ 7 / Dkt. 1-2 at 2; see also Pet. Ex. D / Dkt. 1-5 at 3 (attachment to OSUP, recording that Petitioner checked in on September 15, 2022).) Since the OSUP was issued, he has not had "any arrests, convictions, or negative contact with law enforcement." (Pet'r Decl. ¶ 7 / Dkt. 1-2 at 2.) After his release, Petitioner was granted authorization to work in the U.S. (Pet. at 6, ¶ 24; see also Pet. Ex. H / Dkt. 1-9 (employment authorization documents).)

### C. **Withholding-Only Proceedings in Immigration Court (February 2022-to Present).**

On October 17, 2025, an IJ denied Petitioner's application for protection

from removal. (Pet. at 6, ¶ 25; Pet. Ex. I / Dkt. 1-10 (IJ's order).) Petitioner appealed that denial to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. (Pet. at 6, ¶ 25; Answer Ex. C / Dkt. 8-1 at 12 (notice of appeal to BIA)); see also Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 078-020-062 (Mexico), last accessed Sept. 21, 2026).

**D. Current Detention by ICE (July 2026 to Present).**

On July 28, 2026, ICE arrested Petitioner while he was on his way to work and took him into immigration custody. (Pet. at 2, ¶ 4.) Petitioner "explained to [the officers] that [his] case was on appeal and still pending, but they insisted on arresting and detaining [him]." (Pet. at 7, ¶ 26.) Petitioner "was not given any advance notice that ICE would seek to re-detain [him] or an opportunity to challenge the legality of [his] current detention." (Pet. at 7, ¶ 27; Pet'r Decl. ¶ 10 / Dkt. 1-2 at 3.)

On the same day, ICE served Petitioner with a Form 71-091, Notice of Revocation of Release. (Answer Ex. B / Dkt. 8-1 at 8.) The notice stated,

> Your release has been revoked pursuant to 8 C.F.R. § 241.4(*l*) for the following reason(s): …
>
> Your conduct, or other circumstance, indicates that release is no longer appropriate. Specifically, you:
>
> Subject has been convicted of egregious crimes. Has final order.
>
> . . .
>
> On 07/28/2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be reviewed in support of your release.

(Id. at 8-9.) This notice was signed by an official identified as "A. Sanchez 8315,

SDDO." (Id. at 9.)

ICE also issued a Form 71-090, "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(*l*); 8 C.F.R. § 241.13(i)," indicating that on that date, ICE Officer F. Negrete conducted an informal interview with Petitioner about "the reasons for revocation of his or her order of supervision stated in the notification letter." (Answer Ex. B / Dkt. 8-1 at 10.) The form does not include any response from Petitioner. (Answer Ex. B / Dkt. 8-1 at 10.)

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 078-020-062 (Mexico), last accessed Sept. 21, 2026).

Petitioner is married to a U.S. citizen, with whom he has three minor, U.S.-citizen children, and he has two other U.S.-citizen children from a previous relationship. (Pet. at 5, ¶ 21; Pet'r Decl. ¶ 4 / Dkt. 1-2 at 1.) His parents and four siblings reside in the U.S., and his mother and three of his siblings are U.S. citizens. (Pet'r Decl. ¶ 4 / Dkt. 1-2 at 1.)

**E. Habeas Proceedings.**

Petitioner filed the present Petition on September 11, 2026. (Dkt. 1.) Petitioner seeks immediate release from custody (id. at 12) based on the following claims:

Ground 1: Respondents violated Petitioner procedural due process rights by detaining him without providing him with a pre-detention hearing to determine whether he is a danger to the community or a flight risk. (Id. at 8-11, ¶¶ 33-42.)

Ground 2: Respondents violated 8 C.F.R. § 241.4(*l*)(1) because, when ICE arrested Petitioner, he was not "informed of the reason for the revocation" and did not "receive[] a custody redetermination or an informal interview." (Id. at 11-12, ¶¶ 43-44.)

Respondents answered the Petition on September 18, 2026. They argue that:

(a) "Petitioner cannot show that 'there is no likelihood of removal in the reasonably foreseeable future'" under Zadvydas v. Davis, 533 U.S. 678 (2001) (Answer at 2-4); (b) Petitioner "was *immediately* issued a Notice of Revocation of Release and provided an Informal Interview upon his detention" (id. at 4); and (c) "whatever procedural deficiencies supposedly occurred (which they did not), they do not warrant Petitioner's release and indeed could be cured by means well short of release" (id. at 7).

Petitioner replied on September 21, 2026. (Dkt. 9.) He states that he is "not making a prolonged detention argument" under Zadvydas, but rather he is arguing that "Respondents' re-detention and revocation of his release without any meaningful process constitutions a violation of due process…." (Id. at 3) He argues that Petitioner's "criminal record and final order of removal are not 'changed circumstances'" justifying the revocation of his OSUP, because they pre-dated the issuance of the OSUP. (Id. at 3-4.)

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 2, Because ICE Failed to Comply with Federal Regulations When Revoking His OSUP.

#### 1. Legal Standard.

a. Reasons for Revocation.

"Once ICE releases a noncitizen on an OSUP, … 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'" Manivong v. Bondi, No. 25-cv-6747-JFW-KES, 2025 WL 3211455, at *5, 2025 U.S. Dist. LEXIS 171812, at *13 (C.D. Cal. Sept. 3, 2025) (quoting Roble v. Bondi, No. 25-cv-3196, 2025 WL 2443453, at *3, 2025 U.S. Dist. LEXIS 164108, at *6 (D. Minn. Aug. 25, 2025)). Under 8 C.F.R. § 241.4, an OSUP may be revoked: (1) if a noncitizen violates the conditions of their release, or (2) if specific ICE officials find that (a) "the purposes of release have been served," (b) "it is appropriate to enforce a removal order or to commence removal proceedings against" the noncitizen, or

(c) the "conduct" of the noncitizen, "or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(1)-(2).

A separate regulation, 8 C.F.R. § 241.13, was promulgated in 2001 in response to Zadvydas v. Davis, 533 U.S. 678 (2001). It applies where the noncitizen "has provided good reason to believe there is no significant likelihood of removal … in the reasonably foreseeable future." 8 C.F.R. § 241.13(a); see generally Hoang v. Santa Cruz, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9 (C.D. Cal. Oct. 28, 2025). "[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)…." Hoang, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9. Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them if they violate any of the conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2).

b. Procedures for Revocation.

Regardless of the reason for the revocation, both §§ 241.4 and 241.13 require that the noncitizen be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after his or her return to Service custody to afford [them] an opportunity to respond to the reasons for revocation *stated in the notification*." 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3) (emphasis added). Thus, "ICE's regulations require that when [a noncitizen] is notified of a revocation of release, the 'reasons' for that revocation must be stated in the notification." Nouri v. Herrera, No. 25-cv-1905-JFW-DTB, 2025 U.S. Dist. LEXIS 171809, at *13 (C.D. Cal. Sep. 3, 2025).

**2. Parties' Arguments.**

Petitioner argues that he was not properly informed of the reasons why his OSUP was being revoked. (Pet. at 11-12, ¶¶ 43-44.) He argues, "Respondents'

reliance on the terse explanation provided by ICE … erroneously describing his criminal history and order of removal as 'changed circumstances' only underscores the fact that the 'process' afforded to [Petitioner] was constitutionally defective." (Reply at 5.)

Respondents argue, "[H]e was *immediately* issued a Notice of Revocation of Release and provided an Informal Interview upon his detention. … [H]is Notice of Revocation of Release notified him pursuant to 8 C.F.R. § 241.13(i)(2) [sic] of changed circumstances in his case: that Petitioner's 'conduct, or other circumstances, indicates that release is no longer appropriate. Specifically, [Petitioner] has been convicted of egregious crimes and has a final order.' … The foregoing process is sufficient under the relevant regulations and the U.S. Constitution…. [W]hile Petitioner *claims* that nothing has changed since his OSUP's issuance, that unsupported *claim* cannot be squared with Petitioner's burden to demonstrate a putative violation of his detention process." (Answer at 4-5.) Respondents also argue that the regulation "allows revocation 'when, in the opinion of the revoking official… [t]he purposes of release have been served … [or] [t]he conduct of the alien, or *any other circumstance*, indicates that release would no longer be appropriate." (Id. at 5 (citation omitted).) Alternatively, Respondents argue that "the appropriate remedy for any … procedural deficiency would not be an automatic release from custody," and that the error "could be cured by means well short of release." (Id. at 6-7.)

**3. Analysis.**

a. Petitioner's OSUP revocation is governed by 8 C.F.R. § 241.4(*l*), not § 241.13.

Despite Respondents' citation to 8 C.F.R. § 241.13 (see Answer at 5), there is no evidence that this regulation applies to Petitioner. The ICE officer who completed the Notice of Revocation form revoking Petitioner's OSUP checked the box indicating that it was being "revoked pursuant to 8 C.F.R. § 241.4(*l*)."

(Answer Ex. A / 8-1 at 8.) A separate box, which would have indicated it was being revoked under § 241.13(i), was not checked. (Id.) There is also no evidence that Petitioner's previous release from custody was because removal to his country of origin was not reasonably foreseeable. In February 2022, an IJ found that Petitioner should be released on bond because he was not a flight risk or danger to the community. (Pet. Ex. C / Dkt. 1-4 (IJ's order, noting the proceeding was "a custody redetermination pursuant to 8 C.F.R. § 1236").)

Accordingly, for Petitioner's OSUP revocation to have been lawful, ICE must have complied with 8 C.F.R. § 241.4(*l*).

b. Petitioner's OSUP was not revoked for a proper reason or by an appropriate official.

That regulation authorizes revocation of a noncitizen's OSUP only if: (1) a noncitizen violates the terms of the OSUP, or (2) a specific type of official makes specific findings. See 8 C.F.R. § 241.4(*l*)(1)-(2). Petitioner's OSUP revocation did not comply with either provision.

First, there is no evidence that Petitioner violated the terms of his OSUP. Petitioner declares that he complied with the OSUP's terms, and Respondents have not disputed that evidence. Additionally, the ICE officer who completed the Notice of Revocation of Release form did not check the box indicating that Petitioner violated the terms of his release.

Second, there is no evidence that an authorized official made the necessary findings under 8 C.F.R. § 241.4(*l*)(2). The notice was signed by an official with the title "SDDO," or "Supervisory Detention and Deportation Officer." (Answer Ex. A / Dkt. 8-1 at 8.) This is not an official designated in the regulation. See, e.g., M.P.P.P. v. Santacruz, No. 26-cv-05246-RAO, 2026 WL 1601908, at *4 (C.D. Cal. June 1, 2026) (finding that DHS violated § 241.4 in revoking the noncitizen's OSUP because a "Supervisory Detention and Deportation Officer [or SDDO] is not one of the officials identified" in § 241.4(*l*)(2)); Tiraturian v. Bondi,

817 F. Supp. 3d 883, 887 (C.D. Cal. 2025) (same).

DHS's failure to follow regulations providing a noncitizen with notice and an opportunity to be heard also violate due process principles. See Diaz v. Wofford, No. 25-cv-01079, 2025 WL 2581575, at *7, 2025 U.S. Dist. LEXIS 173666, at *18-19 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); McSweeney v. Warden of Otay Mesa Det. Facility, No. 25-cv-02488, 2025 WL 2998376, at *7, 2025 U.S. Dist. LEXIS 210271, at *19-20 (S.D. Cal. Oct. 24, 2025) ("Both § 241.4 and § 241.13 were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.' … ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release.").

c. The Notice of Revocation failed to give Petitioner sufficient notice of why his OSUP was being revoked.

The Notice of Revocation also failed to comply with § 241.4(*l*)(1) because it failed to explain the reasons for the revocation with any specificity. The notice stated, "Your conduct, or other circumstances, indicates that release is no longer appropriate. … Subject has been convicted of egregious crimes. Has final Order." (Answer Ex. A / Dkt. 8-1 at 8.) The notice failed to explain what convictions it was referencing, and, notably, Petitioner's criminal convictions all date from years *before* the OSUP was even issued. The notice does not explain what, if anything, changed since the OSUP was issued. Without more specifics, it is hard to imagine how a noncitizen could meaningfully respond to such allegations.

Accordingly, because ICE failed to comply with the applicable regulations when they revoked Petitioner's OSUP, Petitioner is entitled to relief on Ground 2 of the Petition.

d. The appropriate remedy is release from custody.

Respondents argue that the appropriate remedy for these violations is not release from custody. The Court disagrees. Releasing Petitioner on the OSUP to which he was previously subject is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents improperly revoked that OSUP. See, e.g., Bedrosian v. Noem, No. 25-cv-02814-KES, 2026 WL 127800, at *11, 2026 U.S. Dist. LEXIS 9564, at *26 (C.D. Cal. Jan. 15, 2026); Hoang v. Noem, No. 25-cv-03177-JLS-RAO, 2026 WL 89319, at *5, 2026 U.S. Dist. LEXIS 5766, at *14 (C.D. Cal. Jan. 12, 2026) ("[T]o require such an interview now, more than two months after Hoang's re-detention, would not cure the violation suffered by Hoang.")

Furthermore, for the reasons discussed below, Petitioner is also entitled to release from custody on Ground 1 of the Petition, because he was entitled to a pre-deprivation hearing as a matter of due process.

**B. Petitioner is Entitled to Relief on Ground 1, Because Respondents Violated His Due Process Rights By Failing to Provide a Pre-Deprivation Hearing.**

**1. Legal Standard.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from

imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Parties' Arguments.**

Petitioner argues that, under the Mathews factors, he was entitled to a pre-deprivation hearing before Respondents revoked his OSUP. (Pet. at 9-11, ¶¶ 38-42.) Respondents argue, "[T]he INA does not contemplate a pre-detention hearing." (Answer at 5.) They do not cite Mathews or address the factors discussed in that case.

**3. Analysis.**

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Many federal district courts around the country have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026

U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025).

The Court agrees with these authorities and finds that ICE's decision in February 2022 to release Petitioner on an OSUP created a liberty interest in release that is protected by the Fifth Amendment Due Process Clause.

b. Risk of erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Respondents have never specifically explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for changing the February 2022 determination that he was not a flight risk or danger to the community. There is no evidence, for example, that Petitioner was convicted of any new crimes or otherwise violated the conditions of his release. See, e.g., Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 ("In complying with Respondents' conditions of Petitioner's release,

Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.

c. Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (same).

Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy.

Releasing Petitioner is narrowly tailored to the specific wrong, because it

restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6-7 (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that:

1. The Petition is granted.

2. Respondents shall **immediately release** Jesus Herrera Cordova

(A# 078-020-062) from custody.

3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[1]

DATED: September 23, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[1] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).